IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PHILLIP CRISTO,

        Plaintiff,

vs.                                      No. CIV 00-732 LFG/WWD-ACE

INTEL CORPORATION,

        Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on Defendant Intel Corporation's ("Intel") Motion for Summary Judgment [Doc. 18]. Plaintiff Phillip Cristo ("Cristo") filed a response, to which Intel replied. The motion may be decided on the briefs and for the reasons given below, it will be granted.

### Background

Cristo was terminated from his employment with Intel on August 11, 1997 for violations of company safety procedures. He had been involved in two serious incidents at the Intel plant in the summer of 1997, which were cited by the company as the reasons he was fired. In July, he began a "descaling" operation[1] on the Cyanide Destruct System at the same time that another technician was conducting preventive maintenance on the system that day; the work this technician was doing required opening a section of pipe so as to replace a valve. Neither Cristo nor the other technician checked with each other prior to starting work at different sections of the same system. The result was that a contractor's employee was hit in the chest with hot water which emerged at high speed

---

[1] "Descaling" means the process of removing scale or sediment build-up that accumulates in pipes. Intel's descaling procedure involves the use of a pressurized mixture of hot water and steam to clean the pipe system.

from the opening in the pipe. Both Cristo and the other technician were reprimanded. Cristo disputes that he was at fault.

In a separate incident in August, Cristo waited almost two hours before responding to an alarm on his pager indicating the existence of a leak of sulphuric acid. When he did eventually respond, he failed to follow proper procedures for reporting and dealing with the leak.[2] This was not a minor incident, but one categorized as a massive spill involving in excess of 55 gallons of acid that damaged Intel's property and had the potential of causing serious injury to Intel's employees.

Cristo sued Intel in state court for wrongful discharge, asserting that he did not, in fact, violate company safety policies. He alleged that Intel:

> interfered with the rights of the Plaintiff to be employed and not to be terminated except for a stated cause which was righteous, accurate, correct, and truthful and consistent with procedures established by the Defendant and placed in effect by the implied employment contract between the parties, the employee handbook, safety rules and other written tenants [sic] of employment inuring to the benefit of the Plaintiff.

Complaint, ¶ 8. The action was removed to federal court on the basis of diversity jurisdiction. (Notice of Removal [Doc. 1]). Both parties consented to proceed before a Magistrate Judge. [Docs. 3, 4].

Although Cristo makes passing reference to national origin discrimination, "whistle blowing," and due process issues (*see*, Response to Motion for Summary Judgment [Doc.28], at 20-21; Cristo

---

[2] Cristo disputes certain factual details involved in Intel's version of these events, including whether he was obligated to respond to an alarm at all, or whether he had any authority to control a coworker, Mr. Leyba, who turned off the flow of sulphuric acid without complying with Intel's safety procedures. Cristo, however, does not dispute the broad description of the incidents as stated above. (Cristo Dep., attached as Ex. A to Intel's Memorandum in Support of Motion for Summary Judgment, hereafter cited as "Cristo Dep.," at 114, 129-33, 140-41, 144-150, 155-57, 166-67, 169, 172-85, 193-94).

Dep. at 207-08), he has not filed suit on any of these claims. The Court agrees with Intel that the only claim to be addressed on this motion is the only claim pled, that is breach of an implied employment contract. Cristo's comments regarding ethnic animus for his firing are speculative and completely unsubstantiated, and in any case he has not followed the required procedures for making a discrimination claim under Title VII or the New Mexico Human Rights Act. In addition, Intel is a private employer and therefore is not subject to Fourteenth Amendment due process requirements, in the absence of an allegation of state action which Cristo does not make. Lugar v. Edmondson Oil Co., 457 U.S. 922, 924, 102 S. Ct. 2744, 2747 (1982); Scott v. Hearn, 216 F.3d 897, 906 (10th Cir. 2000).

Thus, Cristo's only cognizable claim for relief in this case is based on his allegation that Intel violated the terms of an implied contract of employment. Intel argues there is no genuine issue of material fact as to whether such an implied contract exists in this case. The Court finds that Cristo, as the party opposing summary judgment, failed to rebut Intel's prima facie showing of its entitlement to judgment. Cristo simply failed to produce evidence sufficient to raise a factual issue on the question of an implied contract of employment, and Intel's motion for summary judgment should therefore be granted.

## Standards for Summary Judgment

A summary judgment proceeding is appropriately used to cut through the allegations of the pleadings and to determine if there is a triable issue. Summary judgment will be granted when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins.

3

Co., 52 F.3d 1522, 1527 (10th Cir. 1995). The court does not decide the issues of fact, but rather determines if there is an issue that must be resolved at trial.

Summary judgment is appropriate only if there is insufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. Anderson v. Liberty Lobby, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986). Thus, the court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., at 251-52, 106 S. Ct. at 2512. The court, in considering a motion for summary judgment, construes the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing the motion. Perry v. Woodward, 199 F.3d 1126, 1131 (10th Cir. 1999), *cert. denied,* 529 U.S. 1110, 120 S. Ct. 1964 (2000).

### **Plaintiff Demonstrates No Factual Issue Regarding an Implied Contract**

In New Mexico, an employment relationship is presumed to be terminable at the will of either party. Hartbarger v. Frank Paxton Co., 115 N.M. 665, 668, 857 P.2d 776, 779 (1993). However, the presumption is rebuttable by an implied contract term that restricts the employer's power to discharge. Id., 115 N.M. at 668; Kiedrowski v. Citizens Bank, 119 N.M. 572, 575, 893 P.2d 468, 471 (Ct. App. 1995).

> An at-will employment relationship can be terminated by either party at any time for any reason or no reason, without liability ... New Mexico courts have recognized two additional exceptions to the general rule of at-will employment: wrongful discharge in violation of public policy (retaliatory discharge), and an implied contract term that restricts the employer's power to discharge.

Hartbarger, 115 N.M. at 668. Cristo concedes that there is no basis for claiming that his termination was a retaliatory discharge (Plaintiff's Response to Motion for Summary Judgment, at 18). The sole

4

issue, then, is whether an implied contract exists.

Language in an employee handbook can modify the at-will employment relationship if it sets up established procedures for termination, Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M. 728, 732, 918 P.2d 7, 11 (1996), or is otherwise sufficiently explicit to create an expectation of continued employment or to restrict the employer's power to discharge. Hartbarger, 115 N.M. at 669. However, a handbook does not create an implied contract if its language is non-promissory in nature and lacks specific contractual terms which might evidence intent to form such a contract. Sanchez v. The New Mexican, 106 N.M. 76, 78, 738 P.2d 1321, 1324 (1987). An explicit disclaimer in an employee handbook stating that employees can be discharged at any time and for any reason will ordinarily be upheld, unless the employer engaged in some form of conduct or made oral representations which reasonably would lead employees to believe that they would not be terminated without just cause or a fair procedure. Kiedrowski, 119 N.M. at 575.

Intel points out, and Cristo does not deny, that when he was first hired by Intel, Cristo saw, understood and signed an "Employee Orientation Certification" which read: "I understand and agree that nothing in the binder or other materials covering Benefits, History, Culture, Training Opportunities and Policies and Procedures is intended to create an employment contract between Intel and me." The Certification also stated, and Cristo agreed, that Intel retained the right to terminate him at any time and that his "employment will continue as long as Intel in its sole judgment determines that my services are required." Also in April 1995, Cristo signed a document titled "Employment Agreement," in which he acknowledged his understanding that the Agreement "does not in any way restrict my right or the right of INTEL to terminate my employment at will . . .." (Doc. 19, Exs. E, F; Cristo Dep. at 39-42).

5

Intel's "Employment At Will Guideline" states:

> All employment at Intel, except for Intel Contract Employee (ICE) contracts, is "at will." That means that both employees and the company have the right to terminate employment at any time, with or without advance notice and with or without cause. No one other than the Vice-President of Human Resources has the authority to alter this arrangement, to enter into an agreement for employment for specified periods of time (other than ICE contracts), or to make any agreement contrary to this guideline. Furthermore, any such agreement (other than ICE contracts) must be in writing and must be signed by the Vice-President of Human Resources.

(Doc. 19, Ex. G). Cristo acknowledged in his deposition that he was an at-will employee rather than a contract employee according to this document, and there was no reason apart from the document to support a belief that he was not an at-will employee. He acknowledged that his understanding of "at-will" employment status meant that Intel could terminate him at any time, with or without giving a particular reason. (Cristo Dep., at 42-45, 217-18, 223, 224).

As noted above, an implied contract may exist, even in the face of a disclaimer, if the employer has made statements to the employee or otherwise engaged in conduct which reasonably leads the employee to believe he will not be terminated without just cause and a fair procedure. Kiedrowski, 119 N.M. at 575. Explicit oral representations and conduct of the parties can overcome the presumption of "at-will" employment and give rise to an implied contract. Forrester v. Parker, 93 N.M. 781, 782, 606 P.2d 191 (1980); Kestenbaum v. Pennzoil Co., 108 N.M. 20. 24-25, 766 P.2d 280, 284-85 (1988).

Cristo has pointed to nothing in the record that would raise a factual issue as to whether representations were made which would evidence an intent to restrict Intel's power to discharge him. He does not say that anyone told him he could be discharged only for cause, or that he was told he

would be employed for any particular period of time.  He makes no allegations of oral representations that contradict the "Employee Orientation Certificate," the "Employment Agreement," or Intel's "Employment At Will Guideline."  Indeed, he concedes that no such statements were made to him.  (Cristo Dep. at 36).  Oral statements of job security must be clear, unequivocal, and sufficiently explicit to overcome the presumption of at-will employment.  Hartbarger, 115 N.M. at 672; Lopez, 124 N.M. at 542.  In the present case, Cristo has not come forward with sufficiently explicit language or conduct by anyone at Intel to support a claim that the express disclaimers in Intel's employment documents have been overcome.  Indeed, there is no evidence at all of any words or conduct which would support his assertion of an implied contract.

It is true that the Court must look to "all of the circumstances of this employment relationship" in determining whether a contract will be implied, Hartbarger, 115 N.M. at 675, and that the question of whether an at-will employment relationship has been modified is a "question of fact to be discerned from the totality of the parties' statements and actions regarding the employment relationship."  Lukoski v. Sandia Indian Mgmt. Co., 106 N.M. 664, 666, 748 P.2d 507, 510 (1988) (internal quotation marks omitted).  However, the burden is nevertheless on the Plaintiff to "sho[w] that the employer has demonstrated an intent to restrict its power to discharge."  Hartbarger, 115 N.M. at 672; *see also*, Lopez v. Kline, 124 N.M. 539, 542, 953 P.2d 304, 307 (Ct. App. 1997) (plaintiff must present evidence of a promise sufficient to support an implied contract).  Cristo has not met this burden.  Mere argument or contention of counsel is insufficient.  Cristo's burden was to produce evidence by way of sworn testimony, affidavit, answers to interrogatories, admissions, or documentary evidence, demonstrating the existence of a material fact in dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986).

Cristo points to nothing in any employee handbook or other written material which might have led him to believe that he was working under a contract of employment. He does not allege that anyone told him he was anything other than an at-will employee. Indeed, he concedes his at-will status. He argues, rather, that Intel created an implied contract when it set forth particular grounds for termination in its Discipline and Discharge Guideline (Doc. 19, Ex. H) and when it gave him an explicit reason – *i.e.,* safety violations – for his termination.

The Court rejects this argument. A mere listing of the types of conduct which can constitute grounds for discipline or dismissal, such as those Intel includes in its Discipline and Discharge Guideline, does not imply that the enumerated conduct is the only basis for dismissal, nor does it imply a promise not to dismiss an employee for any other reason. Hartbarger, 115 N.M. at 673 ("We see no reason why the list should be deemed inclusive of all reasons for which an employee might be disciplined or terminated, or indeed, why the list should preclude discharge for no reason at all"). An employer "should not be penalized for not having fired employees for no reason." Id., at 785.

As noted above, once the party moving for summary judgment makes a prima facie showing that no genuine issue of material fact exists, the party opposing the motion must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial; he may not simply rest upon his pleadings to avoid summary judgment. Cristo has not met this burden, and the Court finds as a matter of law that no implied employment contract exists in this case.

Cristo and Intel devote much of their briefing to the question of whether Intel did, in fact, have just cause for Cristo's termination. However, the Court does not reach this issue, having determined that no implied contract existed in the first place which set forth any obligation on the part

8

of Intel to terminate employees only for cause.  *See*, Newberry v. Allied Stores, Inc., 108 N.M. 424, 773 P.2d 1231 (1989).  Cristo argues that there is a factual dispute as to whether he actually violated safety regulations, and that Intel had a duty to conduct a thorough investigation into the facts before firing him for the stated violations.  Nonetheless, in an at-will employment situation such as this, an employer has no duty to investigate the factual basis for allegations against an employee.  Panis v. Mission Hills Bank, 60 F.3d 1486, 1490-91 (10th Cir. 1995); Birge v. Apfel, 141 F.3d 1184 (Table, text in Westlaw), No. 97-2158, 1998 WL 165118, at *4 (10th Cir. Apr. 2, 1998).  Nor does an employer have to justify the merits of its reasoning in exercising business decisions.

The result may be harsh and unfair, especially when an employer errs in its assessment of alleged employee misconduct.  If the result is unjust, it is because the law imposes no duty on an employer to be right, wise or fair.  In an at-will situation, as here, an employer may terminate an employee for any reason, save for an illegal one, which Cristo has not established in this case. Weidler v. Big J Enters., Inc., 124 N.M. 591, 599, 953 P.2d 1089, 1097 (Ct. App. 1997).

## Order

IT IS THEREFORE ORDERED that Defendant Intel's Motion for Summary Judgment [Doc. 18] is granted, and this case is dismissed with prejudice.

                                                               Lorenzo F. Garcia
                                                               United States Magistrate Judge